morning may it please the court mr. Mitchell's sole prior felony is a 2018 violation of section 922 g3 being an unlawful user in possession of a firearm it's well established in this circuit that the government must meet its heavy burden to identify a well-established and representative historical analog supporting the disarmament of someone with a prior conviction like mr. mark mr. Mitchell excuse me it has failed to do that here mr. Mitchell g3 conviction does not fall within any of the recognized categories that this court has coalesced around it is not a theft it was not a felony that included violence and he was not completing the term of sentence at the time that he was convicted of the g1 charge does it matter that the prior the predicate he it was on probation during that or having you know the prior one has a giglio situation does it matter that's correct at at the time that he was convicted of the g3 he was arrested on a warrant related to supervised term and I don't think it matters in this case because in those giglio situations the government demonstrated analogs that justified the allowed disarmament of an individual during the time that they were completing the sentence but it was relevant only to the g1 the permanent dispossession so this is not a giglio situation it's not and giglio had that g3 predicate but it was obviously in a different procedural posture because at the time he was completing that term of sentence when he was convicted of the g1 and in this case at the time that mr. Mitchell was convicted of the g1 he was not completing a term of sentence and this is a preserved as applied this is correct yes it's preserved can you explain how you preserved it with the district court as opposed to just saying as applied what was the specifics that you gave because the district court was like huh so what did you tell them so that this is not a plain error to us sure so we first filed our motion to dismiss and within the motion to dismiss we filed a number of different challenges but we specifically stated there was an as applied challenge relevant to the prior felony we also preserved a facial challenge recognizing that that's foreclosed in this court I think we also raised a commerce clause issue which we also acknowledge I'm just asking about the as applied what specifically did y'all say to the district judge and where is that I'm trying to remember the exact posture of where this case I believe it was at the time we had Diaz and so I think that we made the argument that this court has said that not all felony convictions can justify permanent disarmament under g1 and so that we have to engage in a felony by felony analysis and I know I'm trying again to remember where the motion to dismiss was in terms of where this court had been with Diaz but I know that specifically in our motion and certainly with this court we we delineated and as applied and we separated it from a facial challenge so we made clear in both the actual motion that we filed as well as the member memorandum in support of that motion that we were raising both facial and as challenges the few analogs that the government does offer here have been rejected in this circuit or are not applicable to the pertinent conviction the government puts forth an argument about general dangerousness but all of the evidence that it relies on to show this alleged dangerous can't be considered in this court because it's not relevant to his actual felony convictions all of the alleged dangerousness is connected to misdemeanor convictions or at worst convictions that were not actually supported by or excuse me conduct that was not supported by a conviction and we know from Diaz and we know again most recently in Kimball also had supervised release issues on the felony he had supervised related to the g3 that's correct right that were problematic and so why can't we review those in can in with the felony conviction because the government still has to submit those analogs that would say that the conduct related to his felony supports his disarmament under g1 and I think we've discussed the supervised release violations as it relates to g1 and turn and completing the term of your sentence but we there's no analogs that the government has offered that would relate to conduct that was one not related to the actual felony it was after the fact and release we have a lesser burden of proof I think the government cited a document in his 2018 district court case but all that he admitted to was that he had committed conduct that could have been prosecuted as a crime he didn't actually get convicted for any of that conduct so I think we have big proof issues if we begin to consider conduct that was alleged in the context of a supervised release revocation because again the statute says we consider the one the actual felony and that's not felony conduct we admit that he was convicted of the g3 that's the felony conduct but anything related to the supervised release hasn't actually been proven to that higher standard and so I don't think we can just tack on the case all that we have as it relates to Giglio in this circumstance because it's the g3 conviction and the conduct that actually supported a conviction that's at issue I don't think that we can take that admission to mean that first of all the the reference to that admission was in the context of the pre-sentence report as it related to his g1 conviction the instant conviction we don't have any evidence that he admitted that at the time of the g3 conviction and so but I think I think if we look at this court's precedent in Connolly and Daniels we know that that's not enough to actually prove the unlawful user element and especially that active intoxication Daniels I think is especially persuasive because even there we had the jury trial the jurors found him guilty of g3 they found that unlawful user component and the court said that even quote routine intoxication is insufficient without some kind of additional proof of that active intoxication and so I think with the PSR we three times a day you don't think he's always on on it I don't think it's enough to show what I think this court has said as an element of g3 I think that we have the PSR which one again it's not germane to the actual felony below that we're considering the g3 and I think it's too vague to prove active intoxication under this court's precedent specifically Daniels and Connolly Daniels where we sent the case back to a jury on the trot for a trial on whether the defendant was presently intoxicated is that warranted here I don't I don't think we have enough factual basis here to have a trial on the g3 conduct from 2018 I mean I think we have to hold the government to its burden as it's presented before this court today I think that the most if you've had three beers you wouldn't necessarily be and I understand marijuana is more it could be a more intoxicated depends on what the how potent the marijuana is how there are a lot of factors some of some modern marijuana is extremely potent and it would keep you high the whole day and I think but we don't know what this was correct we don't know which means that it's insufficient but beyond that I think the court has so far told us when it's not active intoxication so we don't actually know what that active intoxication would require to be proven but we know that it's there's not enough here well I still don't think we get that temporal connection he admits it in this g1 but we don't know in 2018 he was using it I think so if we're going to consider the analogs that the presented and so again the only other analogs that this court directs excuse me says that we can't consider that he did it now I think that's I think that's Diaz I think that's Kimball and I think that's the statute itself because the statute is wasn't about that it wasn't but we had the pronouncement that you can only consider in the context of these challenges the actual the felony conviction any unproven conduct or any conduct that's outside of that prior felony that renders him a felon even if he had a misdemeanor conviction for being publicly intoxicated on marijuana we couldn't consider that that's correct the court excuse me the government also offers a tradition of alleged recidivism I think to begin I question whether that tradition actually exists the Bruin says that the government must identify a quote well-established and representative historical analog that is quote relevantly similar to the challenge regulation we cannot regulate what beyond what was done at the founding here we have a few notes in law review articles and we have a reference to a third theft of a hog being a capital offense and heroes a case that address 922 n that's certainly not enough to actually show a tradition and even if we accepted that there was a tradition mr. Mitchell doesn't fit within it because all of the conduct that would allegedly render him a recidivist is related to either his misdemeanor convictions or conduct that was alleged but never proven or resulted in dismissal of charges and so as we actually consider his felonies he's not a recidivist given any thought to whether our precedent is harmonious and whether we need to go on bonk in any of these cases and whether this would be a vehicle for that or do you think this case is clearly defined by Diaz and Kimball and would not be a vehicle for that I think this case is clearly defined not only by Diaz and Kimball but also by Connelly and Daniels in the context of g3 considerations where in that case it's it's temporary disarmament so we have a different how element even there where it's that lesser it's that lesser burden on the rights holder we've still held that active intoxication is the only evidence that would allow for the constitutional disarmament consistent with the Second Amendment we don't have that here well speaking of Daniels it's before the Supreme Court and they are considering whether to take it if they take it should we put this case in abeyance I don't think so I think this court's precedent still allows for this court to easily find that mr. Mitchell doesn't fit within any historical tradition I offer Daniels and I offer Connelly because I think those are them that's where I would go if I was considering this case because it's a consideration of g3 but the government doesn't even engage with those analogs on appeal they offer dangerousness they offer recidivism they offer going armed laws things that don't actually fall within mr. Mitchell's conduct and so I think that party presentation principle says that we need to consider what the Supreme Court did very differently than we did on Daniels that would change things why wouldn't we wait to see what they did now they may not take it I'm respectful of that but I think it's October 10 that they're considering it so we'll know fairly soon and if they do take it why wouldn't we put this in abeyance because they could definitely go with some other circuits that are a little bit less happy of what you're saying I think it still wouldn't change the fact that in Daniels we're considering a g3 and in this case we're considering a g1 with a g3 predicate so we know that in the context of the unlawful user it's a temporary ban we have it's you cannot possess a firearm well you are an unlawful user when we consider g1 it is a permanent ban if you have a felony conviction you cannot ever possess a firearm and so the how and why that we consider when we're doing that relevantly similar analysis is necessarily different in a g3 challenge than it is in a g1 challenge because that how is a lesser burden when we have a g3 as opposed to a g1 that is the permanent dispossession disarmament during the time of the intoxication correct and so I think it's I think it can be instructive what the court has found in terms of Daniels and Connolly and I think that I think that bolsters our argument here because we have no proof of active intoxication but I still think that if we're considering g1 we have to consider analogs that meet that higher burden of permanent dispossession not just the g3 temporary so I don't think that if that's correct because we were just talking about that that there was a contemporaneous intoxication claim which were there was a fact issue on yes and so they can't meet that lesser burden as it results as it relates to the temporary dispossession so it certainly can't be the permanent dispossession would be the argument that we have there and so I think that if the Supreme Court considers only in the context of a g3 it wouldn't disrupt this court's precedent as it relates to the g1 and the burden that the government had here to prove his dispossession. What do you say to someone who says if a general person in society were looking at this they would think that we're that this is not a good idea because this person does have a criminal history and could theoretically be dangerous at least or could have been in the past dangerous and you certainly would grant that in real life wouldn't you what do you say to someone who says this is just a you know it's like the categorical approach dancing on the you know the angels and the pins. I think that when you are considering a constitutional right and especially in a criminal context that there will probably be outcomes that feel perhaps not how the the court should rule but are what the law requires because of the importance of the right and the importance of due process and the importance of a defendant's protections and so I think in this case kind of skirting around your question but in terms of the categorical approach in the felony by felony analysis I think that that's the best way we've found to consider this while trying to maintain the importance of all of the large rights at play until we get further further guidance from the Supreme Court unless there's any other further questions I'll save for rebuttal thank you. Thank you. Mr. Cleveland. Good morning Your Honors. May it please the Court. Gaines Cleveland for the government. As a convicted felon Kevin Mitchell was prohibited by statute from possessing a firearm. The predicate felony prohibits anyone who is an unlawful user from possessing a gun. So here we have a recognized predicate felony in 922 g3 but its application depends on the circumstances. There are the circumstances of the 922 g3 offense itself. Where did Mitchell possess the gun? When did he ingest the controlled substance? Then we have other circumstances to consider in combination with the prior felony such as the dangerousness of the individual and what his recidivism says. So let's start with the circumstances of the prior felony. This is in keeping with what the court said in Bettencourt authored by Judge Haines where details of the prior conviction were relevant in applying the Second Amendment. Here a key consideration is when the defendant used the controlled substance. In Connolly this court said quote our history and tradition of firearms regulation showed that there are indeed circumstances where 922 g is valid such as being presently intoxicated by persons carrying firearms. Connolly also referred to this as carrying while under the influence. Right but that's a 922 g3 and we I don't know of any of our cases that have said that the punishment for improperly possessing a gun while intoxicated was severe enough to warrant permanent disembarment under 922 g1. Are you aware of any of our case law that would allow it to be a permanent disbarment from having the gun for a temporarily intoxicated? Maybe for Connolly in g3 but what about g1? Contreras was a g1 with a 922 g3 predicate. I point the court to that decision affirming the decision to dismiss, refusing to dismiss the case. That is an example. It is the 922 g1 mechanism that calls for the permanent disarmament. It's the 922 g3 obviously you can if you were. Because it's permanent it's got to be really we only have a felony as Diaz teaches and we only have one nonviolent offense under the felony. So how can we rule for you on the historical analogs of recidivist and violent offenders? What we're trying what the court is going to be quick drafting with is how to categorize the prior offense in this case the 922 g3. So you need to look at the 922 g3 and the circumstances. When did the when did the drug use take place? Where was the defendant when he possessed the gun? So the precinct report says that the defendant had been using for the previous seven years. So that that covers this entire period. But using doesn't mean you're presently intoxicated. I do submit your honor that if you are using every day you either used the day before or the day of or you're planning to use later to that same day. I think there's sufficient contemporaneousness and that was a very important consideration in the McAllen case that Judge Clement sat on that has been cited very favorably ever since including in Daniels. He defined unlawful user in relation to how regularly and how contemporaneously the drug was used. And in McAllen the court looked to the defendants being a daily user as disqualifying him from possessing a gun. That's from the opinion at 392. Then you've got where the activity occurred. Like Daniels this defendant was out running the roads with a gun as the precinct report said that his loaded stolen pistol was found in the car along with a bag of marijuana. That's from the record at 236. So it's very unlike Connolly who evidently used marijuana at home where one would expect to find a gun for self-defense. In Giglio we've been making reference to that. This court Judge Elrod had said we must factor in the particularities of an individual circumstances when adjudicating an as-applied challenge. That's from record at 1045. This is particularly true in this case since we're talking about a qualifying predicate felony but its application depends on the circumstances. And even in Daniels the remand decision for the Supreme Court, this court said in Daniels, the analysis applied to a different defendant could vary depending on that defendant's history and conduct. Diaz has already said we can't do that. We cannot constitutionally consider his entire criminal record including his misdemeanors and his prior conduct under Diaz. I think it's a given that you cannot do that in order to identify the prior felony offense. What we're talking about here we have a felony. We have a prior felony. The question is and we have it we have it being applied different ways and depending on different circumstances. So I think the court is absolutely entitled to look at the circumstances in order to decide where to place the prior felony. That's really what this is. What about supervised release as part of the felony? Is that something we can look at? I think the court really should not blind itself to the whole picture and this defendant of course was on supervised release for the 922g3 offense and violated at least two times involving violence and drugs. That's something we can look at? I think so. Again in if we can't look at the misdemeanor we can look at the felony and to me those subsequent events are part of that. I think the court needs to be careful how it couches those because they are not part of the 922g1 offense itself which occurred later but this it's conduct. It's part of the 922g3. That's the one we're looking at. Why can't don't you want us to look at that? I want you to look at it. Why can't we look at it? I think that you should because I think you ought to get the whole picture and again it's deciding where to place the 922g3. And what do those show? And they showed that he had a two times when he admitted drug use while he was on supervised release. He engaged in violent conduct in January 2021. He was adjudicated guilty by the district judge of continued drug use and he admitted using marijuana and he also admitted the domestic violence charge. This is cited in our brief at pages six and seven and the second one in the same place is the next year he was adjudicated guilty of again continued drug use in addition to having been arrested for assault. So this is a defendant who has a history of violence and this court ought to be able to take that into account in order to sort of... Even if we can only cubby for the felony this that you just said is something we can and should look at, right? That's exactly right. You didn't argue that in the district court, did you? Is there a reason you did not argue that the defendant was presently intoxicated during the 922g3 offense or that the defendant was on probation during the 922g3 offense? And what do we do about the fact that you didn't make those arguments before the district court? This is, as your honor knows, is a changing area of the law. I think the court, your honor... You can see that you didn't make those arguments before. That's right. Mencia... Is that correct? That's correct, your honor, because it really was not an issue at the time. You didn't make any of these arguments? We relied on the existing interpretation of Fifth Circuit case law at the time which carried a presumption that felonies were felonies and that felonies... We had not... So you relied on Diaz? We had Diaz, but we... There's been a lot of evolution in the law ever since. We were entitled to make the arguments based on the law and that's, in Bullock, I think that's well established that we were able to make these kind of arguments. These are all based on on the record that's here before this court. But Mencia didn't give anything that Kimball didn't already give. I may have missed that, your honor. Kimball did not embrace the view that courts should look beyond a defendant's predicate conviction and assess whether the felony's history or characteristics make him likely to misuse firearms. We're still talking about a situation here where you're deciding where to place the predicate felony which has been identified. It's not trying to identify a prior felony. We have a prior felony. The 9223 is a predicate felony, but it depends on the circumstances. In some cases, 9223 is recognized. In other cases, it's not. As your honor pointed out, you've got the Daniels case which is up for grabs. That is really going up for grabs on a different aspect of it since it's really about the jury instructions that were given in that case. That case is factually different than this one because he used 14 days out of the month as opposed to admitting he used every day. So there was not an established sort of temporal proximity between the use and the possession. In this case, if you go back to Connolly, Connolly begins its opinion by referring to her as being a non-dangerous user. So dangerousness was right in the first line of the opinion in Connolly. So I think the court needs to continue to be aware that the circumstances, including dangerous, whether somebody's risky, those are important considerations. And I'm wondering, getting back to why you didn't make an argument, is because they didn't. Their as-applied was very just generic and the district court was like, huh? And so I'm wondering why isn't this plain error? We didn't present it as such, but I think it could be construed as that. Tell us why we should construe it as plain error. Well, I have to go back and probably really look at the way the motion was framed as well because I need to refresh myself on that. The government did not think it was plain error and that's why you didn't brief it that way. Right. At the time we wrote the brief, the law was very different than it is now. It's just a fact. The district court found their arguments very generic and that is why I'm wondering. We can find plain error whether you argue it or your opponent argues it because that is the issue of what we have to decide. And so I do think if you think there's plain error issue, even if you didn't tell us that sooner, you can tell us now. I'm afraid to say this. We'd have to be that exacting. I can't be that exacting on on them because, you know, I just have to say that I have to agree with Judge Elrod. This area of law has changed so much. Uh, it's just framed differently now. And that's that's that's the reality. I do think we have we have what we need in this case because of the admitted daily use because of his own track record that's that you would look at in deciding where to place the prior 922G3. So . . . Is the PSR from 2018 even in the record of this case? I'm sorry? Is the PSR from 2018 even in the record of this case? It is not. And did anybody ask us to take judicial notice of it or something? It seems that people are now talking about a PSR from 2018 that was not part of this discussion. And we're all now talking about it. And just like it's part of the record here. I would be more than happy to make a motion to that effect. But I can represent to the Court that the defendant at the time said that he was a daily user. And he said he'd use three times a day. The PSR was discussed at the Senate, right, in front of the judge? That's right. The 2018 PSR was discussed. I'm not sure. Maybe I misheard it. I can't say that the 2018 was really before Judge Oser at the time he made the decision. No. You said the law is very different now. How is it different if we're still bound by Diaz? What do you mean by that? Well, Diaz talked about theft being an adequate predicate felony. Theft being an adequate predicate. So that was one identified predicate. And the Court has gone in sometimes piecemeal fashion and identified additional conduct as being an appropriate felony. Drug distribution and Kimball and all the various cases the Court has ruled on. So that's why I point to Contreras. Contreras accepted that the 922G3 is an appropriate predicate. We have, obviously, back at the... We have the historical precedent for... I have my notes here. It's obviously intoxication, being intoxicated and carrying a weapon. That's what Connolly... Connolly really did the analysis, the historical analysis. But it didn't find or it didn't hold that, in that case, that it was appropriate based on the circumstances of her using occasionally at home as a sleep aid and not being a dangerous person. Those were important things in Connolly that made it not acceptable. But the Court did find that there was an established tradition, history and tradition from the time of the founding, that if somebody is intoxicated and they're carrying a firearm, that that is an appropriate historical analog. That is the one we point to here. So, as I say, the Court is, starting with Diaz, pointed to different historical analogs that would be appropriate. You know, I asked your opponent if the Daniels case is taken by the Supreme Court or, I guess, Hermione is the other one that they're looking at. But if one of those cases is taken by the Supreme Court, should we put this case in abeyance? Well, as someone involved in the Daniels case, we certainly hope the Court takes that case. But it really is a narrow question about the jury instructions. So I don't think this Court needs to wait, because I think this Court, we have the regular use established by being a daily user. In Daniels, the defendant admitted smoking 14 days out of the month. There was no contemporaneous established. Here we have contemporaneous established by virtue of the fact that he says he smoked the day before, the day of, or he could smoke later that same day. So I think that the Court could go ahead and decide the case. I asked your friend on the other side about if you . . . if she thought we should . . . needed to go on bonk to do any clarification and whether this was a case that would be amenable to that or if this case was controlled by our . . . squarely controlled by precedent that's not . . . that is harmonious. Do you have any thoughts on this? I think Connolly gives the history, but didn't make the ruling that we're looking for here because the facts were different. Contreras ruled squarely with what we're trying to establish before this Court. This may not be the case. There's tension in the case law between when you can look at individual circumstances, as your Honor said, in Mencius, and when you don't look at individual circumstances. When you take it as a given that you have an established prior felony, and there's not any question. This is a case where I think you have to look at the individual circumstances in order to decide how you're going to categorize the prior felony, the 922G3, will be determined by looking at the circumstances, the individual circumstances. So if the Court wanted to take it up and make that distinction, that may be helpful. But I think this Court could . . . this case could be decided squarely within the current case law. Without individual circumstances, do you lose? We have the fact that he is . . . I think we're in line with Connolly, in a sense, which is to establish sort of the baseline of the history. We have a daily user who I think we have sufficient contemporaneousness. We have the fact that he was carrying the firearm. I think that is enough. Thank you. Thank you. Well, one more question. So you don't think that all of the developments that have happened since you all were in the district court on this need us to send it back to the district court to take another look? No, Judge. Okay. All right. Thank you. So I'd like to begin on that point about plain error. I looked, and we filed the motion to dismiss in April of 2024. Diaz was decided in September of 2024. But even in that motion, we separated an as-applied challenge from a facial challenge. And so I think if Bullock stands for the idea that the government, who bears the burden, can present new legal arguments on appeal, then certainly we should be . . . that should be considered a preserved challenge as it relates to the as-applied G1. Moving on to whether we can consider the supervised release of the G3. The supervised release, as this court has said, is part of the sentence. It's not part of the actual felony conduct and conviction. And so I don't think there's any basis under the parameters of 922 G1 to consider that sentence. It's only the actual felony. And there's a whole host of problems with considering the supervised release. But you're saying on the misdemeanor we can't look at his dangerousness, but I'm not . . . Why can't we look at his dangerousness in his continuation of the felony, the supervised release and all of that? Why can't we look at the whole picture? Well, I think we've rejected dangerousness as a test in general in this circuit. But beyond that, we only look at the felony conduct. And any kind of allegations about what happened after or while he was serving that term of sentence are distinct. And the burdens of proof are distinct. You have a lesser burden of proof as it relates to supervised release conduct and violations than you do when you actually have a felony. I thought he admitted to . . . He admitted . . . I think he admitted to violating his supervised release. But even the conduct that the government alleges, it was all dismissed. He doesn't have any convictions and certainly no felony convictions based on that conduct. And I think that's what you'd need to be able to consider any of that as it relates to the G1 challenge and what we've said in Diaz and Kimball. Considering the circumstances related to a G3, I think there's a little confusion between the G3 analysis and the G1 analysis. Again, the G3, I think, is instructive because we know that active intoxication is required when you have that lesser temporary ban. When it's not met there, it certainly can't be met when you have the permanent ban of G1. But whether or not the circumstances related to the sufficiency of a G3 conviction govern G1, I still think we'd need a new analysis because it's a more severe how. And regardless, we don't have it because we don't have proof of active intoxication. I don't think . . . Just to make sure I understand that argument. Sure. Your argument is that regardless of whether he was presently intoxicated at the time he committed this crime, that still is not as a historic . . . because there's no historical analog for permanent banning for being just presently intoxicated. Is that correct? That's correct. Not that the government has presented here. So it's twofold. The first being that the government hasn't presented sufficient analogs. And in Connolly, I think the court specifically says, not one piece of historical evidence suggests that at the time they ratified the Second Amendment, the founders authorized Congress to disarm anyone it deemed dangerous. The only analogs that they were able to consider were related to historical intoxication laws. And even there, they found that at the founding, folks who were intoxicated were only disarmed until they sobered up. And that's how we end up with active intoxication. So even if somebody said, well, of course he's intoxicated because he's smoking three joints a day, that still doesn't get you there for this case under your theory. That's correct. And even if it did, we don't think they've proven active intoxication underneath this court's case law because I think Daniels says that it's not enough. Daniels, they didn't know if he was actively intoxicated, and that's why it got sent back. Connolly, there was no proof of it. The government has agreed, in other cases, Hamani being one of them, that they didn't have enough evidence to prove active intoxication, and that's why they agreed in this court to some reaffirmance. And so I don't think that, again, a twofold argument, but we haven't been presented with historical analogs that justify the much more onerous how as it relates to G1, but we also don't have any proof of active intoxication. The PSR is not sufficiently, I think, we can't consider an allegation that he smoked since he was 19 or whatever it was to be sufficiently specific to prove active intoxication at the time of his G3 offense, especially when it's in the context of his G1 pre-sentence report. We've never had the 2018 PSR made part of the record. We don't know what that says. As it relates to Contreras, Contreras is also different because in that case the defendant was completing his term of sentence, and that supported his dispossession. We know that from Giglio and Contreras, there was a sufficient historical tradition that was established as it relates to someone completing the term of sentence at the time they get their G1 conviction. And in Contreras, the court found that there was evidence of active intoxication at the time of possession, so we also have another factual difference here. I see that the remainder of my time has elapsed, so unless there are any other further questions. Thank you. Thank you. We appreciate both arguments in this case. They were very helpful. This case is submitted.